UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>SCOTTY'S HOLDINGS, LLC, )<br>)<br>    Debtor(s) [1]. )<br>)<br>_____ )<br>)<br>BREWHOUSE NOBLE WEST, LLC, )<br>        Plaintiff/Counter-Defendant, )<br>    vs. )<br>A POTS & PANS PRODUCTION, LLC, )<br>        Defendant/Counter-Plaintiff. )<br>_____ )<br>)<br>A POTS & PANS PRODUCTION, LLC, )<br>        Third Party-Plaintiff, )<br>    vs. )<br>BREWHOUSE HOLDINGS, LLC, )<br>and JEREMY HAMILTON )<br>        Third Party-Defendants. ) | CASE NO. 18-09243-JJG-11<br>(Jointly Administered)<br><br><br><br><br><br>ADVERSARY CASE<br>NO. 19-50089 |

**ANSWER, AFFIRMATIVE DEFENES,**
**COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

The defendant, A Pots & Pans Production, LLC ("P&P"), by counsel, for its answer and affirmative defenses to Plaintiff's complaint, states as follows:

---

[1] The Debtors include Scotty's Holdings, LLC, Case No. 18-09243-JJG-11 (the "Lead Case"); P&P & Pans Production, LLC, Case No. 18-09244-JJG-11; Scotty's Thr3e Wise Men Brewing Company, LLC, Case No. 18-09245-JJG-11; Scotty's Brewhouse, LLC, Case No. 18-09246-JJG-11; Scotty's Brewhouse Bloomington, LLC, Case No. 18-09248-JJG-11; Scotty's Brewhouse West Lafayette, LLC, Case No. 18-09250-JJG-11; Scotty's Indianapolis, LLC, Case No. 18-09251-JJG-11; Scotty's Brewhouse Downtown Indianapolis, LLC, Case No. 18-09252-JJG-11; Scotty's Brewhouse Mishawaka, LLC, Case No. 18-09253-JJG-11; Scotty's Brewhouse Fort Wayne, LLC, Case No. 18-09255-JJG-11; Scotty's Brewhouse Carmel, LLC, Case No. 18-09256-JJG-11; Scotty's Brewhouse Butler, LLC, Case No. 18-09257-JJG-11; and Scotty's Brewhouse Waco, LLC, Case No. 18-09258-JJG-11.

## Jurisdiction and Venue

1. P&P admits the material allegations in rhetorical paragraph 1.

2. P&P admits the material allegations in rhetorical paragraph 2.

3. P&P admits the material allegations in rhetorical paragraph 3.

4. P&P admits the material allegations in rhetorical paragraph 4.

5. As to rhetorical paragraph 5, P&P consents to the entry of a Final Order or Judgment by the Bankruptcy Court.

## Factual Allegations Common to All Counts

6. P&P admits the material allegations of rhetorical paragraph 6.

7. P&P admits the material allegations of rhetorical paragraph 7.

8. P&P is without sufficient knowledge or information to form a belief as to the allegations of rhetorical paragraph 8.

9. P&P is without sufficient knowledge or information to form a belief as to the allegations of rhetorical paragraph 9.

10. P&P admits the material allegations of rhetorical paragraph 10.

11. P&P admits the material allegations of rhetorical paragraph 11.

12. P&P admits the material allegations of rhetorical paragraph 12.

13. P&P admits that portion of rhetorical paragraph 13 that describes the terms of the management agreement and the compliance requirement of the Indiana Tobacco and Alcohol commission but Denies all other allegations in rhetorical paragraph 13 and specifically asserts there was consideration for the transfer.

14. P&P admits the material allegations in rhetorical paragraph 14.

15. P&P denies the material allegations in rhetorical paragraph 15.

16. P&P admits the material allegations in rhetorical paragraph 16.

17. P&P admits the material allegations in rhetorical paragraph 17.

18. P&P admits the material allegations in rhetorical paragraph 18.

19. P&P admits the material allegations in rhetorical paragraph 19.

20. P&P denies the material allegations in rhetorical paragraph 20.

### Count I—Breach of Contract

21. P&P denies the material allegations in rhetorical paragraph 21 and specifically asserts and alleges that P&P did not breach the contract.

### Count II—Bailment

22. P&P denies the material allegations contained in rhetorical paragraph 22.

23. P&P denies the material allegations contained in rhetorical paragraph 23.

24. P&P denies the material allegations contained in rhetorical paragraph 24.

### Count III—Unjust Enrichment

25. P&P denies the material allegations contained in rhetorical paragraph 25.

26. P&P denies the material allegations contained in rhetorical paragraph 26.

27. P&P denies the material allegations contained in rhetorical paragraph 27

WHEREFORE, defendant, P&P, by counsel, requests that the Plaintiff take nothing by way of its complaint, for a judgment in favor of P&P on Plaintiff's complaint, for reimbursement of P&P' expenses and legal fees, and for all other relief just and proper.

### AFFIRMATIVE DEFENSES

P&P, by counsel, for its affirmative defenses states that Plaintiff's complaint is barred by one or more of the following:

1. Unclean hands;

2. The Plaintiff was the one that first breached the agreement referenced in the complaint;

3. Plaintiff intentionally caused damage to P&P by sweeping Plaintiff's working capital account, by failing to provide sufficient working capital, by failing to pay its employees, and by failing to pay management fees to P&P;

4. Plaintiff received valuable consideration when it transferred the Alcoholic Beverage Permit to P&P;

5. P&P is the current owner of the Alcoholic Beverage Permit and is prepared to market it for sale in order to mitigate its damages; and

6. P&P reserves the right to raise additional affirmative defenses as may be learned through discovery.

*[the balance of this page intentionally left blank]*

## A POTS & PANS PRODUCTION, LLC'S COUNTERCLAIM

A Pots & Pans Production, LLC ("P&P"), for its counterclaim against Brewhouse Noble West, LLC ("Noble"), states and alleges as follows:

### I. Jurisdiction, Venue, and Parties

1. On December 11, 2018, P&P filed a Voluntary Petition under Chapter 11 under the United States Bankruptcy Code thereby commencing its bankruptcy case.

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157 and 1334.

3. Venue of the proceeding is proper in this District pursuant to 28 U.S.C. § 1409.

4. P&P consents to the entry of a Final Order or Judgment being entered by the Bankruptcy Judge in this matter.

5. P&P is an Indiana Limited Liability Company with its principal place of business located in the State of Indiana.

6. P&P is the management company for various Scotty's Brewhouse restaurants and Scotty's Thr3e Wise Men Breweries and Restaurants.

7. Noble is an Indiana Limited Liability Company with its principal office address at 7530 Cape Cod Drive, Indianapolis, IN 46250.

8. Noble was the owner of a Scotty's Brewhouse restaurant located at 14741 Hazel Dell Crossing, Noblesville, Indiana ("Restaurant").

9. Brewhouse Holdings, LLC ("Member") is an Indiana Limited Liability Company with its principal office address at 7530 Cape Cod Drive, Indianapolis, IN 46250.

10. Member is the sole member of Noble.

5

11. Jeremy Hamilton ("Hamilton") is an individual who resides in Indiana with a principal mailing address of 7530 Cape Cod Drive, Indianapolis, IN 46250.

12. Upon information and belief, Hamilton is the registered agent for Noble and Member and Hamilton is actively involved in the operations of Noble and Member.

## II. Factual Allegations Common to All Counts of Counterclaim and Third-Party Complaint

The Restaurant Management Agreement

13. In order to run the Restaurant, Noble requested that P&P provide its expertise in the various phases of restaurant development, management, and operations.

14. On or about February 25, 2015, P&P and Noble entered into a Restaurant Management Agreement (the "Agreement") whereby P&P would manage and operate the Restaurant for Noble, the Restaurant's owner. A true and accurate copy of the Agreement is attached to Noble's complaint as Exhibit "B."

15. Pursuant to §5.01 of the Agreement, Noble was required to establish one or more bank accounts in connection with operation of the Restaurant (collectively, the "Working Capital Account").

16. Noble established a Working Capital Account at Chase Bank.

17. Section 5.01 of the Agreement states, in relevant part:

The Working Capital Account shall at all times be at banks designated by [Noble] and maintained in the name of [Noble]. Each of [Noble], Member, and [P&P] shall be a signatory on the Working Capital Account and the Member Account.... All revenue generated at the Restaurant (i.e., Gross Sales) shall be deposited into the Working Capital Account.

18. Section 5.02 of the Agreement states, in relevant part:

All monies derived from the operation of the Restaurant shall be deposited in the Working Capital and payment for all operating expenses and capital expenditures

6

of the Restaurant shall be made from the Working Capital Account. [P&P] shall in no event by required to advance any of its own funds for the operation of the Restaurant. Owner's failure to provide working capital within three (3) days of notice as provided above shall constitute a default hereunder pursuant to section 12.01(a) of this Agreement. All funds in the Working Capital Account and the Member's Account shall belong solely to [Noble].

19. Pursuant to section 6.02 of the Agreement, Noble agreed to pay P&P a management fee equal to five percent (5%) of Gross Sales for each calendar month and said fee shall be paid by the tenth (10th) of the following calendar month.

20. Pursuant to section 6.03 of the Agreement, Noble agreed to pay P&P a branding/marketing fee equal to three percent (3%) of Gross Sales for each calendar month and said fee shall be paid by the tenth (10th) of the following calendar month.

21. Pursuant to section 7.01 of the Agreement, Noble agreed that P&P shall act solely as its agent and that "all debts and liabilities to third persons incurred by [P&P] in the course of its management of the Restaurant in accordance with the Agreement shall be the debts and liabilities of [Noble] only and [P&P] shall not be liable for any such debts or liabilities…" *Agreement*, §7.01.

22. Pursuant to section 11.01 of the Agreement, Noble agreed to indemnify, defend, and hold P&P harmless for any and all liabilities, debts, claims or expenses, including attorneys' fees of the Restaurant or otherwise incurred by P&P. See also *Agreement*, §7.01.

Post-Petition Management/Acts

23. Following the Petition Date, P&P continued to manage the Restaurant.

24. Post-petition, Noble never provided any notice of any breach of default to P&P relating to P&P's management under the Agreement.

25. On February 8, 2019, P&P notified Noble that there was a shortfall in working capital in connection with the Restaurant (the "Notice").

26. Upon information and belief, the shortfall was due to Hamilton, acting on behalf of Noble and/or Member, improperly withdrawing or transferring incoming revenue from the Working Capital Account in the amounts of: $10,000.00 on February 11, 2019; and $25,000.00 on February 12, 2019 (collectively, the "Withdrawn Funds").

27. Upon information and belief, Hamilton withdrew funds from the Working Capital Account and transferred them to Member or Hamilton for no consideration.

28. Hamilton was not authorized under the Agreement to make such withdrawals.

29. In the Notice, P&P demanded that such shortfall be funded by Noble within three (3) days as required by §5.02 of the Agreement.

30. In the Notice, P&P demanded that Noble pay all outstanding management fees owed to P&P under the Agreement.

31. In the Notice, P&P notified Noble that Noble's failure to properly fund the Working Capital Account and its failure to pay P&P all outstanding management fees would constitute defaults under the Agreement by Noble.

32. Noble failed to fund the shortfall in the Working Capital Account.

33. On February 13, 2019, P&P terminated the Agreement with Noble due to Noble's defaults and failure to cure.

34. Noble failed to pay P&P the outstanding management and branding/marketing fees due to P&P under the Agreement.

35. Due to Noble's and Hamilton's actions, P&P could not pay the employees for accrued wages and other amounts.

36. Following the closure of the Restaurant and failure to pay employees, P&P and the other related debtors suffered substantial negative press, including:

    (a)    Print articles identifying another "closed Scotty's Brewhouse" location and associating such closing with the Chapter 11 cases;

    (b)    Local news reports on the abrupt closure of the Restaurant;

    (c)    Complaints to the press by unpaid employees; and

    (d)    Social media complaints about the closure and demands to boycott all Scotty's Brewhouse locations.

37.    Numerous employees also made demand on P&P for payment of wages.

38.    P&P is entitled to its reasonable accounting fees, attorney's fees and costs under the Agreement due to Noble's breaches and pursuant to §15.05 of the Agreement.

### III. Counterclaim's First Cause of Action
### (Breach of Contract)

39.    P&P hereby incorporates by reference rhetorical paragraphs 1-38 of its counterclaim as if set forth fully herein.

40.    The Agreement constitutes a valid and binding contract.

41.    Noble breached the Agreement by, among other things, improperly sweeping the Working Capital Account, failing to return the Withdrawn Funds, by failing to provide sufficient working capital, failing to pay its employees, and failing to pay management fees as required under the Agreement

42.    Despite demand, Noble failed and refused to cure its breaches under the Agreement.

43.    The Agreement requires Noble to indemnify P&P for any and all of its losses and damages.

44.    P&P has been damaged in at least the following amounts:

| Payroll Expense | $34,872.41 |
|---|---|

| Unpaid Management Fees: | $36,244.28 |
| Other Unpaid Vendors/Expenses: | $910.00 |
| Total: | **$72,026.69** |

45. Noble's breach has also caused other consequential and incidental damages to P&P in terms of reputational harm and lost revenue, in an amount to be proven at trial.

46. P&P is entitled to recover all of its attorneys' fees and costs incurred in this action pursuant to the express terms of the Agreement.

### IV. Counterclaim's Second Cause of Action
### (Sale of Liquor License)

47. P&P incorporates by reference rhetorical paragraphs 1-46 of its counterclaim as if set forth fully herein.

48. Noble defaulted under the terms of the Agreement by among other things, failing to pay the management fee when due and failing to fund a shortfall in operating expenses.

49. Further, P&P was required to advance the sum of $35,000.00 to cover the final payroll and other expenses continue to remain outstanding.

50. Because of Noble's breaches, P&P terminated the Agreement.

51. The Alcoholic Beverage License is in the name of P&P.

52. P&P is excused from cooperating in turning over the Alcoholic Beverage License due to the first and numerous prior breaches by Noble.

53. P&P is excused from cooperating in turning over the Alcoholic Beverage License due to the Agreement being terminated.

54. P&P, as the owner of the Alcoholic Beverage License, is entitled to sell the same in an effort to mitigate its damages.

WHEREFORE, P&P requests that the Court enter judgment against Noble on the Counterclaims' First and Second Causes of Action as follows:

A. For losses/damages in the amount of $72,026.69;

B. For additional consequential and incidental damages in an amount to be proven at trial;

C. For an order authorizing P&P to sell the Alcoholic Beverage License in order to mitigate its damages;

D. For pre-judgment and post-judgment interest on the foregoing amounts at the highest rate permitted by applicable law;

E. For all of P&P attorney's fees, costs and expenses; and

F. All other relief just and proper.

### V. Counterclaim's Third Cause of Action
### (Actual/Constructive Fraudulent Transfer
### Ind. Code §§ 32-18-2-14, 32-18-2-15, 32-18-2-17)

55. P&P hereby incorporates by reference rhetorical paragraphs 1-54 of its counterclaim as if set forth fully herein.

56. The withdrawal of the Withdrawn Funds constituted a transfer of an asset of Noble.

57. P&P is a creditor of Noble.

58. The withdrawal of the Withdrawn Funds occurred while Noble was insolvent.

59. Noble transferred the Withdrawn Funds to Member and/or Hamilton with the actual intent to hinder, delay, or defraud the creditors of Noble, including without limitation P&P, including to preclude the payment of payroll and the management fees due to P&P.

60. Noble transferred the Withdrawn Funds intentionally to place them out of reach of Noble's creditors.

61. The transfer of the Withdrawn Funds was made for the benefit of the insiders of Noble, including without limitation Member and/or Hamilton as transferees.

62. Noble also transferred the Withdrawn Funds to Member and/or Hamilton without receiving a reasonably equivalent value in exchange for the transfer or obligation, and Noble:

(a) was engaged or was about to engage in a business or a transaction for which the remaining assets of Noble were unreasonably small in relation to the business or transaction; or

(b) intended to incur or believed or reasonably should have believed that Noble would incur debts beyond Noble's ability to pay as the debts became due.

63. By reason of the foregoing, the transfer of the Withdrawn Funds to Member and/or Hamilton is avoidable pursuant to Indiana Code §§ 32-18-2-14, 32-18-2-15, and 32-18-2-17.

WHEREFORE, P&P respectfully requests that the Court enter a judgment against Noble on the Counterclaim's Third Cause of Action, as follows:

A. Declaring the transfer of the Withdrawn Funds to be avoidable as fraudulent transfers pursuant to Indiana Code §§ 32-18-2-14, 32-18-2-15, and 32-18-2-17;

B. Avoiding the transfer of the Withdrawn Funds;

C. Granting judgment in favor of P&P against Noble, in the amount of the Withdrawn Funds, plus interest on such amount in the maximum amount allowed by applicable law;

D. Directing that any claims of Noble be disallowed pursuant to Bankruptcy Rules 7001 and 3007 and Bankruptcy Code § 502 until such time as it has paid to P&P's estate all amounts deemed avoidable transfers by the Court; and

E. Granting such other and further relief deemed just and proper.

**A POTS & PANS PRODUCTION, LLC'S THIRD-PARTY COMPLAINT**

A Pots & Pans Production, LLC ("P&P"), by counsel, for its third-party complaint against Brewhouse Holdings, LLC ("Member") and Jeremy Hamilton ("Hamilton"), states and alleges as follows:

### I. Jurisdiction, Venue, and Parties

1. On December 11, 2018, P&P filed a Voluntary Petition under Chapter 11 under the United States Bankruptcy Code thereby commencing its bankruptcy case.

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157 and 1334.

3. Venue of the proceeding is proper in this District pursuant to 28 U.S.C. § 1409.

4. P&P consents to the entry of a Final Order or Judgment being entered by the Bankruptcy Judge in this matter.

5. P&P is an Indiana Limited Liability Company with its principal place of business located in the State of Indiana.

6. P&P is the management company for various Scotty's Brewhouse restaurants and Scotty's Thr3e Wise Men Breweries and Restaurants.

7. Noble is an Indiana Limited Liability Company with its principal office address at 7530 Cape Cod Drive, Indianapolis, IN 46250.

8. Noble was the owner of a Scotty's Brewhouse restaurant located at 14741 Hazel Dell Crossing, Noblesville, Indiana ("Restaurant").

9. Member is an Indiana Limited Liability Company with its principal office address at 7530 Cape Cod Drive, Indianapolis, IN 46250.

10. Member is the sole member of Noble.

11. Hamilton is an individual who resides in Indiana with a principal mailing address of 7530 Cape Cod Drive, Indianapolis, IN 46250.

12. Upon information and belief, Hamilton is the registered agent for Noble and Member and Hamilton is actively involved in the operations of Noble and Member.

## II. Factual Allegations Common to All Counts of Counterclaim and Third-Party Complaint

The Restaurant Management Agreement

13. In order to run the Restaurant, Noble requested that P&P provide its expertise in the various phases of restaurant development, management, and operations.

14. On or about February 25, 2015, P&P and Noble entered into a Restaurant Management Agreement (the "Agreement") whereby P&P would manage and operate the Restaurant for Noble, the Restaurant's owner. A true and accurate copy of the Agreement is attached to Noble's complaint as Exhibit "B."

15. Pursuant to §5.01 of the Agreement, Noble was required to establish one or more bank accounts in connection with operation of the Restaurant (collectively, the "Working Capital Account").

16. Noble established a Working Capital Account at Chase Bank.

17. Section 5.01 of the Agreement states, in relevant part:

The Working Capital Account shall at all times be at banks designated by [Noble] and maintained in the name of [Noble]. Each of [Noble], Member, and [P&P] shall be a signatory on the Working Capital Account and the Member Account.... All revenue generated at the Restaurant (i.e., Gross Sales) shall be deposited into the Working Capital Account.

18. Section 5.02 of the Agreement states, in relevant part:

All monies derived from the operation of the Restaurant shall be deposited in the Working Capital and payment for all operating expenses and capital expenditures

14

of the Restaurant shall be made from the Working Capital Account. [P&P] shall in no event by required to advance any of its own funds for the operation of the Restaurant. Owner's failure to provide working capital within three (3) days of notice as provided above shall constitute a default hereunder pursuant to section 12.01(a) of this Agreement. All funds in the Working Capital Account and the Member's Account shall belong solely to [Noble].

19. Pursuant to section 6.02 of the Agreement, Noble agreed to pay P&P a management fee equal to five percent (5%) of Gross Sales for each calendar month and said fee shall be paid by the tenth (10th) of the following calendar month.

20. Pursuant to section 6.03 of the Agreement, Noble agreed to pay P&P a branding/marketing fee equal to three percent (3%) of Gross Sales for each calendar month and said fee shall be paid by the tenth (10th) of the following calendar month.

21. Pursuant to section 7.01 of the Agreement, Noble agreed that P&P shall act solely as its agent and that "all debts and liabilities to third persons incurred by [P&P] in the course of its management of the Restaurant in accordance with the Agreement shall be the debts and liabilities of [Noble] only and [P&P] shall not be liable for any such debts or liabilities…" *Agreement*, §7.01.

22. Pursuant to section 11.01 of the Agreement, Noble agreed to indemnify, defend, and hold P&P harmless for any and all liabilities, debts, claims or expenses, including attorneys' fees of the Restaurant or otherwise incurred by P&P. See also *Agreement*, §7.01.

<u>Post-Petition Management/Acts</u>

23. Following the Petition Date, P&P continued to manage the Restaurant.

24. Post-petition, Noble never provided any notice of any breach of default to P&P relating to P&P's management under the Agreement.

25. On February 8, 2019, P&P notified Noble that there was a shortfall in working capital in connection with the Restaurant (the "Notice").

26. Upon information and belief, the shortfall was due to Hamilton, acting on behalf of Noble and/or Member, improperly withdrawing or transferring incoming revenue from the Working Capital Account in the amounts of: $10,000.00 on February 11, 2019; and $25,000.00 on February 12, 2019 (collectively, the "Withdrawn Funds").

27. Upon information and belief, Hamilton withdrew funds from the Working Capital Account and transferred them to Member or Hamilton for no consideration.

28. Hamilton was not authorized under the Agreement to make such withdrawals.

29. In the Notice, P&P demanded that such shortfall be funded by Noble within three (3) days as required by §5.02 of the Agreement.

30. In the Notice, P&P demanded that Noble pay all outstanding management fees owed to P&P under the Agreement.

31. In the Notice, P&P notified Noble that Noble's failure to properly fund the Working Capital Account and its failure to pay P&P all outstanding management fees would constitute defaults under the Agreement by Noble.

32. Noble failed to fund the shortfall in the Working Capital Account.

33. On February 13, 2019, P&P terminated the Agreement with Noble due to Noble's defaults and failure to cure.

34. Noble failed to pay P&P the outstanding management and branding/marketing fees due to P&P under the Agreement.

35. Due to Noble's and Hamilton's actions, P&P could not pay the employees for accrued wages and other amounts.

36. Following the closure of the Restaurant and failure to pay employees, P&P and the other related debtors suffered substantial negative press, including:

16

  (a) Print articles identifying another "closed Scotty's Brewhouse" location and associating such closing with the Chapter 11 cases;

  (b) Local news reports on the abrupt closure of the Restaurant;

  (c) Complaints to the press by unpaid employees; and

  (d) Social media complaints about the closure and demands to boycott all Scotty's Brewhouse locations.

37. Numerous employees also made demand on P&P for payment of wages.

38. P&P is entitled to its reasonable accounting fees, attorney's fees and costs under the Agreement due to Noble's breaches and pursuant to §15.05 of the Agreement.

### III. Third-Party Complaint's First Cause of Action
### (Actual/Constructive Fraudulent Transfer
### Ind. Code §§ 32-18-2-14, 32-18-2-15, 32-18-2-17)

39. P&P hereby incorporates by reference rhetorical paragraphs 1-38 of its third-party complaint as if set forth fully herein.

40. The withdrawal of the Withdrawn Funds constituted a transfer of an asset of Noble.

41. P&P is a creditor of Noble.

42. The withdrawal of the Withdrawn Funds occurred while Noble was insolvent.

43. Noble transferred the Withdrawn Funds to Member and/or Hamilton with the actual intent to hinder, delay, or defraud the creditors of Noble, including without limitation P&P, including to preclude the payment of payroll and the management fees due to P&P.

44. Noble transferred the Withdrawn Funds intentionally to place them out of reach of Noble's creditors.

45. The transfer of the Withdrawn Funds was made for the benefit of the insiders of Noble, including without limitation Member and/or Hamilton as transferees.

17

46. Noble also transferred the Withdrawn Funds to Member and/or Hamilton without receiving a reasonably equivalent value in exchange for the transfer or obligation, and Noble:

   (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of Noble were unreasonably small in relation to the business or transaction; or

   (b) intended to incur or believed or reasonably should have believed that Noble would incur debts beyond Noble's ability to pay as the debts became due.

47. By reason of the foregoing, the transfer of the Withdrawn Funds to Member and/or Hamilton is avoidable pursuant to Indiana Code §§ 32-18-2-14, 32-18-2-15, and 32-18-2-17.

WHEREFORE, P&P respectfully requests that the Court enter a judgment against Member and Hamilton, jointly and severally, as follows:

   A. Declaring the transfer of the Withdrawn Funds to be avoidable as fraudulent transfers pursuant to Indiana Code §§ 32-18-2-14, 32-18-2-15, and 32-18-2-17;

   B. Avoiding the transfer of the Withdrawn Funds;

   C. Granting judgment in favor of P&P against Member and Hamilton, jointly and severally, in the amount of the Withdrawn Funds, plus interest on such amount in the maximum amount allowed by applicable law;

   D. Directing that any claims of Member and Hamilton be disallowed pursuant to Bankruptcy Rules 7001 and 3007 and Bankruptcy Code § 502 until such time as they have paid to P&P's estate all amounts deemed avoidable transfers by the Court; and

   E. Granting such other and further relief deemed just and proper.

## IV. Third-Party Complaint's Second Cause of Action
### (Conspiracy/Aiding and Abetting Fraudulent Transfer)

48. P&P hereby incorporates by reference rhetorical paragraphs 1-47 of its third-party complaint as if set forth fully herein.

49. As set forth above, Member and/or Hamilton was the recipient of the fraudulent transfer of the Withdrawn Funds from Noble.

50. Hamilton materially aided and assisted with regard to the transfer of the Withdrawn Funds from Noble to Member and/or Hamilton, with full knowledge of the facts described herein and the improper nature of the transfers.

51. As a result of Hamilton's aiding and assisting with the transfer of the Withdrawn Funds from Noble to Member and/or Hamilton, Hamilton is liable for the damages caused to P&P and P&P's estate as a result of the fraudulent transfers described herein.

WHEREFORE, P&P respectfully requests that the Court enter a judgment against Hamilton as follows:

A. Finding that Hamilton conspired/aided and abetted the fraudulent transfer of the Withdrawn Funds;

B. Awarding damages in favor of P&P in the amount of the Withdrawn Funds, plus interest on such amount in the maximum amount allowed by applicable law;

C. Directing that any claims of Hamilton be disallowed pursuant to Bankruptcy Rules 7001 and 3007 and Bankruptcy Code § 502 until such time as Hamilton has paid all amounts deemed avoidable transfers by the Court; and

E.  Granting such other and further relief deemed just and proper under law and equity.

Respectfully submitted,

HESTER BAKER KREBS LLC

By  /s/ John J. Allman
Christopher E. Baker
John J. Allman
Hester Baker Krebs LLC
One Indiana Square, Suite 1600
Indianapolis, IN  46204
(317) 833-3030
Fax: (317) 833-3031
Email:   cbaker@hbkfirm.com
Email:   jallman@hbkfirm.com

*Attorneys for A Pots & Pans Production, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

- David J. Jurkiewicz   DJurkiewicz@boselaw.com, mwakefield@boselaw.com, rmurphy@boselaw.com, dlingenfelter@boselaw.com
- U.S. Trustee   ustpregion10.in.ecf@usdoj.gov

I further certify that on July 12, 2019, a copy of the foregoing was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

n/a

/s/ John J. Allman
Christopher E. Baker
John J. Allman